## Associates Consumer Discount Co. v. Gabriel

*James Skorupa,* for plaintiff.
*Louis M. Taffer,* for defendants.

SILVESTRI, *J.*, October 24, 1974 —This is an action in assumpsit to collect the unpaid balance of a loan evidenced by a judgment note.

The note is dated January 15, 1964, and is in the amount of $2,040 and provides for 30 monthly payments in the amount of $68, the first payment being due January 28, 1964, and the final payment being due July 28, 1966. The note is a printed form used by plaintiff and contains three signature lines. At the right end of each signature line is printed "(SEAL)". The signature of the husband-defendant is on the first signature line and the signature of the wife-defendant is on the second signature line; the third signature line is blank.

Defendants defaulted in their payments on May 20, 1966. On November 15, 1973, seven years and six months after default, plaintiffs instituted this action, claiming $1,095.48 made up of $912.90[1] as the balance due and $182.58 being 20 percent for attorneys' fees. Defendants filed an answer raising the statute of limitations. On February 13, 1974, after hearing before the arbitrators, an award was made in favor of plaintiff in the amount of $1,095.48, plus interest. Defendants filed an appeal from the award of the arbitrators. On April 19, 1974, defendants' motion to amend their answer was denied by the court. The case was tried by the court without a jury on June 13, 1974, and a verdict was entered for plaintiffs in the amount of $1,351.90. In support of its verdict, the court[2] filed a memorandum opinion that the obligation was under seal and the action could have been brought

---

1. The pleadings do not reveal the principal balance due as of May 20, 1966.

2. Judge Wentley, since resigned from the bench, was the trial court and filed the memorandum opinion.

up to 20 years after default and that the six-year statute of limitations did not apply; further, that defendants may not have known the consequences of a seal was not a defense.

Defendants filed exceptions to the court's adjudication. No transcript of the hearing was ordered; therefore, we will consider only the statute of limitations question.

If the note executed by defendants was under seal, then the action was timely brought, since an action on a sealed instrument can be brought up to 20 years, and even thereafter, from the date the cause of action thereon arises; if not, then the action is barred by the six-year period of limitations: Act of March 27, 1713, 1 Sm. L. 76, sec. 1, 12 PS §31. It is to be noted that there is no statute of limitations applicable to instruments under seal, although there is a presumption of payment after 20 years which may be rebutted at the burden of plaintiff: Transbel Inv. Co. v. Scott, 344 Pa. 544, 26 A.2d 205 (1942).

Practically all commentators on the law agree that the personal, individual "seal" on documents is an anachronism and the reason for its existence has long since ceased. An interesting history of the origin and use of the "seal" is set forth in 7 Wigmore, §2161, 633, et seq. (3rd Ed.). Suffice to say that the history of the "seal" clearly demonstrates that the reasons for its origin and use do not exist in the twentieth century. This has been recognized by over half of the States who have abolished it altogether or extremely limited its use and application.

We take no position in this case as to whether or not a seal with all its ramifications should continue viable, but, instead, for the purposes of this decision, we accept it to be so.

The origin and use of the seal was based on illiteracy, in that persons could not write their names, but the person had his own special way of sealing the instruments to accomplish the purpose of identity and authenticity. This made good sense. In this day and stage of history, it is somewhat anomalous and nonsensical to force on a literate public an identical, sterotyped, uniform printed form with the word or letters, with or without parenthesis, "SEAL" or "L.S." at the end of a signature line and hold that it is the unique individual "seal" of identity of the party or parties signatory. Is it the signature on the printed form or the word "SEAL" or "L.S." behind the signature which is relied on to identify or authenticate the document? To put the question is to answer it.

A member of the general public who deals with entities which use printed forms has no choice but to sign the form used by the entity, and if the printed form contains the word "SEAL" or "L.S." after the signature line, it cannot be said that the person is choosing to adopt the printing as his or her personally identifiable seal.

The printed form containing the printed word "SEAL" or "L.S." is a trap for the unwary as is dramatically demonstrated by the instant case. Defendants received only $1,647.50, the discount charges were $328.50, making a total of $2,040. If we assume, which is probably not true, that as of May 20, 1966, the principal balance then due was $912.90 then as of that time defendants had paid $745.60, add this amount to the amount of the verdict as of June 13, 1974, and it totals $2,103.50, a sum substantially more than the actual proceeds received by defendants and more than the face of the note. Carried to its ridiculous extreme, if plain-

tiffs waited until May 19, 1986, to institute suit, interest on $912.90 at 18 percent per year as provided for in the note, at simple interest, would amount to $3,286.44, which added to the debt of $912.90 would total $4,119.34, as the amount due plaintiffs and if you added 20 percent for attorneys fees, which amounts to $839.87, there would be due and owing by defendants an amount totaling $5,039.21. Such a result predicated solely on the fiction of the printed word "SEAL" or "L.S." on a printed form is manifestly unjust and, of worse consequence, destroys confidence in the law and governmental institutions. If the law is to indulge in fictions, it should do so for the improvement of the lot of people not the impoverishment of the people.

We do not mean to imply or hold that people should not pay their just debts when due; but when a debt is due, it is neither burdensome nor onerous for the creditor to proceed to enforce the debt with some degree of dispatch and the statute of limitation of up to six years for the enforcement of money due is more than sufficient time to so do.

Neither do we imply nor hold that a "seal" on a document is of no effect. That should be left to another case on another day. If a person chooses to use an individual seal on documents he executes, he may do so, for then it is presumed he knows what he is doing. However, no person should be deemed to have sealed a document where the word "SEAL" or "L.S." is on a form printed document designed and used for the convenience of the obligee even though the document contains the words, "Witness my/our hand and seal."

The printed word "SEAL" or "L.S." on a printed form document is not the seal of the parties signa-

tory, nor does it make the document one under seal regardless of any printed language in the document tending to indicate the parties intend it to be so. We do not believe that this holding will in any way affect the ability of entities using such forms to do business. If its effect is to cause them to be vigilant and efficient in the enforcement of money claims, this will be in furtherance of the policy of the law not to encourage claims to become stale.

The judgment note in the instant case, being a printed form having the printed word "SEAL" at the end of the signature line, is not a sealed instrument and, accordingly, is governed by the six-year period of limitation. Since the action was brought seven years and six months after the debt became due, it is barred by the statute of limitations.

### ORDER

And now, October 24, 1974, after argument and consideration of the briefs of the parties, it is ordered and decreed that judgment is entered for defendants.